KAYE SCHOLER LLP

1   Arthur J. Abramowitz (*pro hac vice pending*)
    Email address: aabramowitz@cozen.com
2   Brian P. Flaherty (*pro hac vice pending*)
    Email address: bflaherty@cozen.com
3   Eric L. Scherling (*pro hac vice pending*)
    Email address: escherling@cozen.com
4   COZEN O'CONNOR
    1900 Market Street
5   Philadelphia, Pennsylvania 19103
    Telephone: (215) 665-4647
6   Facsimile: (215) 701-2191

7   Marc S. Cohen (Bar Number 65486)
    Email address: mcohen@kayescholer.com
8   Ashleigh A. Danker (Bar Number 138419)
    Email address: adanker@kayescholer.com
9   KAYE SCHOLER LLP
    1999 Avenue of the Stars, Suite 1700
10  Los Angeles, California 90067
    Telephone: (310) 788-1000
11  Facsimile: (310) 788-1200

12  Attorneys for Plaintiff
    FOAMEX INNOVATIONS OPERATING COMPANY

13
                        UNITED STATES BANKRUPTCY COURT
14                      CENTRAL DISTRICT OF CALIFORNIA
                               RIVERSIDE DIVISION
15

16  In re                                  )   Case No. 6:11-bk-12031-DS
                                           )
17  DAVID L. FARLEY, Debtor and            )   Chapter 11
    Debtor-in-Possession                   )
18                                         )   Adv. Pro. No. 6:11-ap-01131-DS
                                           )
19  ─────────────────────────────         )
                                           )   NOTICE OF MOTION AND MOTION
20  FOAMEX INNOVATIONS OPERATING           )   FOR (1) APPOINTMENT OF A
    COMPANY,                               )   RECEIVER AND (2) PRELIMINARY
21                                         )   INJUNCTION; MEMORANDUM OF
                                           )   POINTS AND AUTHORITIES IN
22                    Plaintiff,           )   SUPPORT THEREOF; DECLARATION
                                           )   OF ANDREW R. PRUSKY IN SUPPORT
23         v.                              )   THEREOF
                                           )
24  DAVID L. FARLEY, Debtor and            )   (Ex Parte Application to Shorten Time Filed
    Debtor-in-Possession; and ANATOMIC     )   Concurrently Herewith)
25  GLOBAL, INC., a California corporation )
                                           )   **Regular Notice Hearing Date:**
26                    Defendants.          )
                                           )   Date: March 10, 2011
27                                         )   Time: 8:30 a.m.
                                           )   Place: Courtroom 304
28                                         )        3420 Twelfth Street
                                           )        Riverside, CA 92501

23301450.DOCX

**TO THE HONORABLE DEBORAH J. SALTZMAN, DEFENDANT DAVID L. FARLEY, AND DEFENDANT ANATOMIC GLOBAL, INC.:**

PLEASE TAKE NOTICE that on March 10, 2011 at 8:30 a.m., or as soon thereafter as counsel may be heard by the Honorable Deborah J. Saltzman, United States Bankruptcy Judge, in Courtroom 304 located at 3420 Twelfth Street, Riverside, California 92501, plaintiff Foamex Innovations Operating Company ("FXI") shall move and hereby does move for entry of an order (i) appointing a receiver over the assets of defendant Anatomic Global Inc. ("AGI"), a non-debtor California corporation wholly owned by debtor in possession David L. Farley ("Farley" or the "Debtor") and (ii) preliminarily enjoining Farley and AGI from dissipating the value of AGI (the "Motion").

The Motion is based on, among other things, Sections 105(a) and 363(b) of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.*, and Rule 7065 of the Federal Rules of Bankruptcy Procedure, on the grounds that the Debtor has threatened to take steps to impair the value of AGI, the stock of which is believed to be the estate's primary asset, including threatening to close down AGI and lure its employees to join a new entity to be formed by the Debtor to the detriment of creditors of both the Debtor and AGI.

The Motion is based upon this Notice, the attached Memorandum of Points and Authorities, the attached declaration of Andrew R. Prusky, all pleadings and evidence filed with the Court, such other evidence, oral or documentary, that may be presented before or at the hearing on the Motion, and the arguments of counsel for FXI at the hearing on the Motion.

**PLEASE TAKE FURTHER NOTICE** that if you do not oppose the Motion, you need take no further action. If you do oppose the Motion, Local Bankruptcy Rule 9013-1(f) requires that any response to the Motion be filed with the Court and served upon counsel for the Debtor at the address given in the upper left corner of the first page of this Notice not less than fourteen (14) days before the date designated for hearing. The response shall contain a brief, but complete, written statement setting forth all of the reasons for opposing the Motion, a memorandum of points and authorities, declarations, and all evidence on which the responding party intends to

1  rely.  Pursuant to Local Bankruptcy Rule 9013-1(h), the failure to file and serve a timely

2  opposition to the Motion may be deemed by the Court to constitute consent to the Court's

3  granting the relief sought therein.

4       **PLEASE TAKE FURTHER NOTICE** that concurrently herewith FXI has filed an *ex*

5  *parte* application to shorten time for the hearing on the Motion.  If the *ex parte* application is

6  granted, FXI shall provide an amended notice of the hearing on the Motion and any new

7  deadlines for opposing the Motion.

8       **WHEREFORE,** the Debtor respectfully requests that the Court grant the Motion and

9  such other and further relief as the Court deems just and proper.

10

11  DATED:  February 14, 2011          COZEN O'CONNOR

                                -and-

12                         KAYE SCHOLER LLP

13

14                         By: _____

15                            Ashleigh A. Danker

                       Attorneys for Plaintiff,

16                         FOAMEX INNOVATIONS OPERATING

                       COMPANY

17

18

19

20

21

22

23

24

25

26

27

28

KAYE SCHOLER LLP

**TABLE OF CONTENTS**

I.    INTRODUCTION .......................................................................................... 1

II.   FACTS .......................................................................................................... 2

      A.    The Parties' Relationship ................................................................... 3

      B.    Default by AGI – and Subsequent Threats by Farley to Drain all
            Value out of AGI ................................................................................ 6

III.  ARGUMENT ................................................................................................ 8

      A.    Applicable Legal Standards ................................................................ 8

            1.    Appointment of a Receiver Pursuant to 11 U.S.C. § 105(a) ..... 8

            2.    Issuance of a Preliminary Injunction Pursuant to FRBP 7065 ... 9

            3.    Issuance of an Injunction Pursuant to 11 U.S.C. § 105(a) ....... 10

      B.    Applying These Standards, the Court Should Grant FXI its
            Requested Relief. .............................................................................. 11

            1.    The Court Should Appoint a Receiver. ................................... 11

            2.    The Court Should Enjoin Farley and AGI from Transferring
                  Any Assets of AGI Without the Prior Approval of this Court. ... 12

                  (a)   A Rule 65 Preliminary Injunction is Warranted. ........... 12

                  (b)   A Section 105(a) Injunction is Necessary to Preserve the
                        Estate in the Face of a Threatened Fraudulent Transfer, which
                        Adherence to Section 363 of the Bankruptcy Code Would
                        Prevent. ....................................................................... 16

IV.   CONCLUSION ............................................................................................ 18

KAYE SCHOLER LLP

KAYE SCHOLER LLP

# TABLE OF AUTHORITIES

## Cases

*April Enters., Inc. v. KTTV,*
  147 Cal. App. 3d 805,
  195 Cal. Rptr. 421 (1983) ................................................................... 13

*Aviara Parkway Farms, Inc. v. Agropecuaria La Finca S.P.R. de R.L.,*
  2009 U.S. Dist. LEXIS 7173 (S.D. Cal. 2009) .................................... 16

*Berg & Berg Ents., LLC v. Boyle,*
  178 Cal. App. 4th 1020 (Cal. Ct. App. 2009) .................................... 13

*F.T. Produce, Inc. v. Agwa, Inc.,*
  2011 U.S. Dist. LEXIS 6013 (S.D. Cal., January 21, 2011, Decided) ............. 16

*Ford Motor Co. v. Weaver,*
  680 F.2d 451 (6th Cir. 1982) ............................................................. 14

*Freeman & Mills, Inc. v. Belcher Oil Co.,*
  11 Cal. 4th 85,
  44 Cal. Rptr. 420 (1995) ................................................................... 13

*Harm v. Frasher,*
  181 Cal. App. 2d 405,
  5 Cal. Rptr. 367 (1960) ..................................................................... 13

*Hilao v. Marcos (In re Estate of Marcos),*
  25 F.3d 1467 (9th Cir. 1994) ............................................................. 16

*In re A.H. Robins Co.,*
  788 F.2d 994 (4th Cir. 1986) ............................................................... 8

*In re Alert Holdings, Inc.,*
  148 B.R. 194 (Bankr. S.D.N.Y. 1992) ............................................... 10

*In re AP Indus., Inc.,*
  117 B.R. 789 (Bankr. S.D.N.Y. 1990) ............................................... 10

*In re Baker,*
  68 B.R. 360 (D. Or. 1986) ........................................................... 17, 18

*In re Brook Valley VII, Joint Venture,*
  496 F.3d 892 (8th Cir. 2007) ............................................................. 15

*In re Combined Metals Reduction Co.,*
  557 F.2d 179 (9th Cir. 1977) ............................................................. 14

*In re Coram Healthcare Corp.,*
  271 B.R. 228 (Bankr. D. Del. 2001) .................................................. 15

*In re Deak & Co.,*
  63 B.R. 422 (Bankr. S.D.N.Y. 1986) ................................................. 17

KAYE SCHOLER LLP

*In re Johns-Manville Corp.*,
  91 B.R. 225 (Bankr. S.D.N.Y. 1988) ................................................................ 10

*In re Johnson*,
  518 F.2d 246 (10th Cir. 1975) ......................................................................... 14

*In re MacDonald*,
  114 B.R. 326 (D. Mass. 1990) ......................................................................... 17

*In re Neuman*,
  71 B.R. 567 (S.D.N.Y. 1987) ........................................................................... 10

*Johnson v. Cal. State Bd. of Accountancy*,
  72 F.3d 1427 (9th Cir. 1995) ........................................................................... 10

*Lakeview Tech., Inc. v. Robinson*,
  446 F.3d 655 (7th Cir. 2006) ........................................................................... 16

*Milden v. Joseph (In re Milden)*,
  1997 U.S. App. LEXIS 7726 (9th Cir. 1997) ................................................. 18

*Mosser v. Darrow*,
  341 U.S. 267 (1952) ......................................................................................... 14

*Rubin v. Pringle (In re Focus Media Inc.)*,
  387 F.3d 1077 (9th Cir. 2004) ......................................................................... 16

*Schlein v. Golub*,
  178 B.R. 82 (Bankr. E.D. Pa. 1995) .......................................................... 8, 9, 11

*Seaman's Direct Buying Serv., Inc. v. Standard Oil Co.*,
  36 Cal. 3d 752,
  206 Cal. Rptr. 354 (1984) ................................................................................ 13

*Sherr v. Winkler*,
  552 F.2d 1367 (10th Cir. 1977) ....................................................................... 14

*Sutherland v. Barclays American/Mortgage Corp.*,
  53 Cal. App. 4th 299,
  61 Cal. Rptr. 2d 614 (1997) ............................................................................. 13

*United States v. Ken Int'l. Ltd.*,
  184 B.R. 102 (D. Nev. 1995) ........................................................................... 17

*Wolf v. Weinstein*,
  372 U.S. 633 (1963) ......................................................................................... 14

**Statutes**

11 U.S.C. § 105(a) ................................................................ 8, 9, 11, 12, 17, 18

11 U.S.C. § 363(b) ...................................................................... 10, 12, 17

11 U.S.C. § 363(b)(1) ......................................................................... 17, 18

11 U.S.C. § 541(a)(1) ................................................................................ 17

28 U.S.C. § 1334 ............................................................................................ 2

28 U.S.C. § 1409(a) ...................................................................................... 2

28 U.S.C. § 157 .............................................................................................. 2

Fed. R. Civ. P. Rule 65 .......................................................................... 10, 12

Federal Rule of Bankruptcy Procedure 7065 ........................... 9, 12, 17, 18

Local Bankruptcy Rule 9013-1(a)(11) ....................................................... 3

Local Bankruptcy Rule 9013-1(a)(7) .......................................................... 2

**Other Authorities**

Witkin, Summary of California Law, Contracts, §743 .............................. 13

KAYE SCHOLER LLP

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## MEMORANDUM OF POINTS AND AUTHORITIES

Foamex Innovations Operating Company ("FXI"), by and through its undersigned counsel, hereby moves the Court, pursuant to sections 105(a) and 363(b) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 7065 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for (i) entry of an Order appointing a receiver (the "Receiver") for Anatomic Global Inc. ("AGI"), a company wholly owned by debtor David L. Farley ("Farley"), for the purposes identified herein, and (ii) entry of an injunction, against Farley and AGI, enjoining them from transferring any assets of AGI outside of the ordinary course of business, as they have threatened to do in the manner described below, without notice and a hearing in this Court in accordance with section 363 of the Bankruptcy Code.   In support hereof, FXI avers as follows:

## I.

## INTRODUCTION

FXI is seeking two forms of emergency relief through this Motion.

First, FXI requests that the Court appoint the Receiver, pursuant to its equitable powers under section 105(a) of the Bankruptcy Code, with a charge to take control of the affairs of AGI for the purpose of:

ensuring that AGI's management is not purposefully taking steps to disable itself from functioning or remaining in business and attempting to perform all of its obligations to all of its creditors including, but not limited to, FXI; and

investigating the conduct of employees of AGI for the purpose of ensuring that no employees are acting in collusion to harm AGI or otherwise violating any duty to AGI under any employment contract and/or applicable law relating to trade secrets or intellectual property of AGI.

Second, FXI requests that the Court issue an injunction, pursuant to section 105(a) of the Bankruptcy Code and Bankruptcy Rule 7065, enjoining Farley and AGI from transferring any assets of AGI outside of the ordinary course of business, without prior approval of this Court.   As

1    discussed herein, an unauthorized dissipation of AGI's assets would constitute an unauthorized

2    use or disposition of property of Farley's bankruptcy estate – his 100% ownership interest in AGI

3    – under section 363 of the Bankruptcy Code.

4          Both requests arise as an emergency because the facts justifying them have only recently

5    been discovered and events may be occurring that will effectively destroy AGI.

6                                               II.

7                                            **FACTS**

8          FXI is a Delaware corporation with its principal place of business at Rose Tree Corporate

9    Center II, 1400 Providence Road, Suite 2000, Media, Pennsylvania 19063-2076.  FXI is in the

10   business of manufacturing a large range of foam products for use in a variety of applications.

11         Farley is an individual citizen of the state of California who resides at 2891 Venezia

12   Terrace, Chino Hills, California, 91709.  On January 21, 2011, Farley filed a voluntary petition

13   for relief under Chapter 11 of the Bankruptcy Code.  Farley continues to operate as a debtor-in-

14   possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.  No trustee, examiner, or

15   committee has been appointed as of the date hereof.  To date, Farley has not yet filed his

16   schedules or statement of financial affairs.

17         AGI is a California corporation with its principal place of business at 1241 Old Temescal

18   Road, Corona, California 92881.  Farley is the sole owner, the sole director and the Chief

19   Executive Officer of AGI.  AGI is in the business of manufacturing mattresses and sleep

20   accessories using FXI's foam products.

21         This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.

22         Venue is proper in this district pursuant to 28 U.S.C. § 1409(a).

23         The statutory predicates for the relief requested herein are sections 105(a) and 363 of the

24   Bankruptcy Code, and Bankruptcy Rule 7065.

25         On February 13, 2011, FXI commenced an adversary proceeding by filing a Complaint

26   against each of Farley and AGI.   In the Complaint, FXI alleges several causes of action,

27   including counts for breach of contract, breach of the duty of good faith and fair dealing, and

28   breach of fiduciary duties to creditors.  Through the Complaint, FXI seeks the assistance of this

KAYE SCHOLER LLP

1    Court in restraining Farley and AGI from following through on their explicit threats to harm

2    creditors of both Farley and AGI by willfully destroying the value of AGI's business through

3    transfers of its assets, without any judicial oversight as to the *bona fides* of such transactions.

4         FXI is a creditor of both AGI and Farley.    Farley has guaranteed the indebtedness of AGI

5    to FXI, which guaranty he secured by pledging his ownership interest in AGI to FXI.

6         The stock owned by Farley in AGI constitutes, upon information and belief, the principal

7    asset of his Chapter 11 bankruptcy estate.    The actions taken or threatened to be taken by Farley,

8    for the clearly stated purpose of diminishing the value of AGI in order to undercut FXI's ability to

9    recover on its debt, will not only have a direct adverse impacting on creditors of AGI, but also

10   creditors of Chapter 11 debtor Farley, and is therefore an issue well within the scope of this

11   Court's jurisdiction.    The bankruptcy estate of Farley has a critical interest in the preservation

12   and maximization of the value of AGI, which constitutes Farley's principal asset.

13   **A.**    **The Parties' Relationship**

14        FXI and AGI have had a longstanding relationship during which FXI has supplied large

15   quantities of foam to AGI.    As explained in further detail below, AGI is indebted to FXI in two

16   separate respects.    First, AGI presently owes FXI approximately $2.3 million for polyurethane

17   foam purchased in accordance with the terms of a Supply Agreement dated May 18, 2010 (the

18   "Supply Agreement").    Second, AGI owes approximately $4.6 million in principal and interest to

19   FXI pursuant to the terms of a loan, as evidenced by the Second Amended and Restated

20   Promissory Note, as amended (the "Note").

21        Farley is indebted to FXI because he guaranteed all of AGI's obligations to FXI, and to

22   secure that indebtedness he granted a security interest to FXI in his 100% ownership interest in

23   AGI.

24        From time to time, FXI has provided financing to AGI.    In 2005, AGI borrowed

25   approximately $1.3 million from FXI pursuant to an Amended and Restated Promissory Note

26   dated September 18, 2005.    AGI's financial condition deteriorated, however, to the point where

27   its continued existence was threatened in the absence of a substantial capital infusion.

28

KAYE SCHOLER LLP

In early 2010, AGI requested an additional loan from FXI in a substantially higher amount, and FXI agreed to make a loan to AGI in the principal sum of $4,539,937.32 in May 2010. AGI asserted that the proceeds of this loan and additional credit terms offered by FXI would provide it with adequate working capital.

To this end, on May 18, 2010, FXI and AGI entered into a Loan and Security Agreement (the "Prior Loan Agreement") and AGI gave FXI a Note, dated that same day, in the amount of $4,539,937.32. Under the Prior Loan Agreement, AGI granted a security interest to FXI in substantially all of its assets, including, but not limited to, all of its accounts receivable, equipment and inventory. In addition, Farley provided a personal guaranty of the obligations of AGI to FXI (the "Guaranty").

At the same time, AGI entered into a Supply Agreement with FXI. In the Supply Agreement, AGI agreed to purchase 100% of its requirements for certain polyurethane foam products from FXI, with certain limitations.

Within several months following entry by AGI and FXI into the Prior Loan Agreement, however, AGI and Farley determined that AGI's plans for financial stability were not working, and that it needed additional funding. AGI sought additional funding from third parties, including Celtic Capital Corporation ("Celtic"). Celtic agreed to provide funding to AGI, in the form of a $2.5 million revolving line of credit, but conditioned financing on a subordination by FXI of its first-priority security interest in virtually all of its collateral under the Prior Loan Agreement.

FXI agreed to this material impairment of its security, as a necessary concession to Farley and to AGI, to allow for the new financing being provided by Celtic. In consideration for the subordination by FXI of its security interest in the assets of AGI, Farley entered into a Pledge Agreement with FXI whereby he pledged his AGI stock as collateral to secure his obligations to FXI under the Guaranty. In accordance with the Pledge Agreement, Farley delivered all of the shares of AGI stock to the Wilmington Trust Company to hold as agent for FXI.

The Celtic financing closed on November 10, 2010. On that day, FXI and AGI modified the Prior Loan Agreement by entering into an Amended and Restated Loan and Security Agreement (the "Amended Loan Agreement"). The Amended Loan Agreement amended and

1    restated the Prior Loan Agreement in its entirety.  On the same day, AGI gave to FXI a First

2    Amendment to the Note, in the amount of $4,539,937.32.

3        Also on November 10, 2010, concurrent with the execution of the Amended Loan

4    Agreement, Celtic provided a $2.5 million revolving line of credit, pursuant to a loan agreement it

5    made with AGI (the "Senior Loan Agreement").  Under the Senior Loan Agreement, AGI granted

6    security interests to Celtic in substantially all of its assets, including, but not limited to, all of its

7    accounts receivable and equipment, but excluding its inventory, which remained subject to FXI's

8    first-priority lien.  Moreover, as requested by AGI and required by Celtic, FXI simultaneously

9    entered into a Debt and Lien Subordination Agreement with AGI and Celtic (the "Subordination

10    Agreement"), pursuant to which FXI subordinated its interest in collateral other than inventory.

11    The Subordination Agreement specifically excludes the obligations of Farley under the Guaranty

12    and the Pledge Agreement from its scope.[1]

13        Under the Amended Loan Agreement, AGI made certain affirmative covenants, which

14    were critical in assuring that AGI's obligations and Farley's guaranty obligations could be

15    satisfied.  AGI agreed to not change its name, business structure or identity, its principal place of

16    business or chief executive office, the location of Collateral or the place where debtor keeps its

17    records concerning the Collateral, or add any new fictitious name without notice to FXI.  See

18    Amended Loan Agreement, paragraph 10(c).  AGI also agreed to "keep in full force and effect its

19    existence in good standing, continue to conduct and operate its business substantially as presently

20    _____

21    [1] The subordination agreement provides that "The Subordinated Creditor shall have no right to take any
action with respect to the Celtic first priority collateral, whether by judicial or non-judicial foreclosure

22    notification to the borrower's account debtors seeking of the appointment of a receiver for any portion of
the borrower's assets or otherwise, unless and until the senior debt has been paid in full."  FXI here is not

23    "taking any action with respect to the Celtic first prior collateral."  The relief sought herein does not affect
that collateral.  Instead, FXI seeks relief against AGI and David Farley preventing them from ceasing

24    operation of the company as an ongoing concern.  Nothing about the relief sought attempts to assert any
security interest in the first priority collateral or enter any judgment in favor of FXI on account of the
current default of their financial obligations owed to it by AGI.  Rather, the complaint seeks only

25    declaratory judgment that AGI is in default and the granting of certain relief in the nature of receivership
and injunctions to ensure that the entity continues to operate.  Celtic is free, as it sees fit, to exercise its

26    rights without any interference whatsoever from any of the relief that is sought or may be obtained in this
action.  Indeed, if the relief granted herein is in fact granted, it will have no adverse impact whatsoever on

27    Celtic and indeed will be to the benefit of Celtic as well.

28

1   conducted and operate and maintain and protect all franchises, permits, licenses, trademarks,

2   trade names and contracts and preserve all the remainder of its material property used or useful in

3   the conduct of its business and keep the same in repair and condition." See Amended Loan

4   Agreement, paragraph 10(f).

5   **B.    Default by AGI – and Subsequent Threats by Farley to Drain all Value out of AGI**

6         Notwithstanding its receipt of financing from Celtic and the credit accommodations made

7   by FXI, AGI quickly proved unable – or unwilling – to meet its financial obligations.

8         As of January 28, 2011, AGI had failed to pay the approximately $2.3 million due to FXI

9   under the Supply Agreement.  Further, AGI has stated that it is unable to pay the amounts due

10  under the Amended Loan Agreement and Note.  As a consequence, AGI is in default of its

11  obligations under both the Supply Agreement and the Amended Loan Agreement.  On

12  January 28, 2011, FXI sent AGI a notice of default pursuant to Section 15.1(f) of the Amended

13  Loan Agreement.

14        Over the course of the last several weeks, Farley, AGI and FXI have engaged in

15  negotiations in an attempt – at least insofar as FXI was concerned – to cure the ongoing defaults

16  and allow AGI to continue operating as a going concern.

17        The parties have been unable to achieve a resolution, and FXI now understands the reason

18  why: Farley and AGI, by their own admission, will accept no arrangement that does not

19  purposefully deprive FXI of the protection of its rights as a creditor of both AGI and Farley.

20        FXI proposed a resolution under which FXI would accept an 80% equity interest in AGI

21  in exchange for its total outstanding debt, which approximated $7 million dollars at that time.

22  Farley stated his interest in such a solution at a meeting with FXI on January 13, 2011, although

23  he stated that he was also having discussions with a third party.  FXI prepared a letter of intent

24  setting forth the details of the offer as well as an employment agreement under which Farley

25  would remain the Chief Executive Officer of AGI.  Farley never gave FXI any indication that

26  FXI's proposal was conceptually unacceptable.

27        Since then, however, while FXI thought that Farley and AGI were proceeding in good

28  faith, it has become apparent that AGI and Farley are not.   While Farley and FXI have been in

KAYE SCHOLER LLP

discussions with each other, Farley has also been in discussions with The Signet Group, LLC

("Signet"), about a possible loan or other investment by Signet into AGI, by which, among other

things, AGI will raise funds with which to pay a portion of the amounts due to FXI.  Signet is

apparently willing to make an investment in AGI on terms more favorable to Farley individually

than those which FXI has stated it is willing to accept.

However, due to FXI's rights under the various loan documents described above, Farley

and AGI are not free to accept Signet's offer without the consent of FXI.  As stated in the Prusky

Declaration, unless FXI agrees to a $1 million "haircut" in repayment of its debt, and makes other

concessions such as, for example, consenting to the issuance of additional stock that might be

acquired by Signet, or releasing liens on certain collateral, Farley and AGI cannot consummate a

deal with Signet.

As a consequence, Farley and AGI have resorted to conduct, including tactics in their

negotiations with FXI, that are wrongful, including breaches of fiduciary duties to creditors and a

stated intent to effect fraudulent transfers to the detriment of creditors, including FXI.

As more specifically detailed in the supporting Declaration of Andrew R. Prusky, Senior

Vice President, Legal, of FXI, attached hereto and made a part hereof (the "Prusky Declaration"),

representatives of AGI have threatened that Farley and other members of AGI management will

collectively "walk away" if FXI does not submit to the demands of Farley and immediately form

a new entity operating the same business, thereby jeopardizing the survival of AGI and its ability

to repay its obligations to all of its creditors, including FXI.  Since Farley has guaranteed AGI's

obligations to FXI with his stock in AGI, and because it is unclear whether Farley has any

unencumbered assets, destruction of AGI's value would render his Guaranty effectively

worthless.

AGI and Farley are effectively threatening its creditors that they would rather destroy AGI

and, in the process, the value of Farley's chief asset, his AGI stock, through intentionally

fraudulent transfers rather than pay those creditors.

More recently, on Thursday, February 3, 2011, representatives of AGI stated that the

entire management team of AGI was prepared not only to close the doors of AGI, but to then

1   establish a new company which will engage in precisely the same business as AGI is now

2   operating, with capital to be supplied by Signet or other third party.  The threat is to appropriate

3   the relationship and business information of AGI for the benefit of Farley in derogation of the

4   rights of creditors.

5        For the reasons explained in the Prusky Affidavit, FXI does not view these as idle threats.

6   FXI perceives the real danger that Farley will cause all of AGI's value to evaporate if he is not

7   enjoined from doing so.

## III.

## ARGUMENT

A.   **Applicable Legal Standards**

    1.   **Appointment of a Receiver Pursuant to 11 U.S.C. § 105(a)**

Section 105(a) of the Bankruptcy Code provides as follows:

> The court may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title.  No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C. § 105(a).

    A bankruptcy court may invoke section 105(a) if necessary to preserve a right provided

elsewhere in the Bankruptcy Code, and the reach of section 105(a) relief may extend to non-

debtor entities, where appropriate.   For example, a bankruptcy court may properly stay

proceedings against non-debtor co-defendants if there is such identity between the debtor and the

third party that the debtor may be said to be the real party defendant and a judgment will, in effect

be a judgment against the debtor.  *See In re A.H. Robins Co.*, 788 F.2d 994 (4th Cir. 1986).

    In another case in which there was substantial identity between a debtor and non-debtor

entities, Section 105(a) provided the foundation upon which the bankruptcy court, in *Schlein v.

Golub*, 178 B.R. 82 (Bankr. E.D. Pa. 1995), held that it had the power to appoint a receiver for

partnerships which were non-debtors in a case in which the Chapter 11 debtor held an interest in

the partnerships.  An adversary proceeding had been filed seeking to avert the dissipation of

1   partnership assets, and the court found that it had jurisdiction to appoint a receiver over the non-

2   debtor partnerships because the activities of the non-debtor partnerships so significantly impacted

3   upon the debtor's reorganization efforts.

4          The court in *Schlein* was "quick to conclude that, generally, the appointment of a receiver

5   is a remedy which lies within the ambit of the Court's authority, particularly where, as here, the

6   threat of asset dissipation is raised." *See id.* at p. 85.   According to the court, this authority arises

7   under the equitable powers of the bankruptcy court as set forth in section 105(a). *See id.* The

8   court in *Schlein* held that appointment of a receiver over the non-debtor partnerships did not

9   exceed Court's authority, because "the activities of the non-debtors so significantly impact upon

10  the debtor's reorganization effort." *Id.*   In this respect, the *Schlein* case closely resembled "those

11  cases wherein jurisdiction over non-debtor over non-debtor persons or entities has been taken

12  under 11 U.S.C. § 105(a)." *Id.*

13         In *Schlein* the court made two further observations that are salient here.   In a footnote, the

14  court indicated that section 105(b) of the Bankruptcy Code is not implicated, presumably because

15  a receiver was not being sought for the "case" – which is all that section 105(b) prohibits. *See id.*

16  at n.2.   Further, given the inextricable link between the individual debtor and the non-debtor

17  partnerships, such that any action with respect to the partnerships would necessarily have

18  profound effects on the debtor's bankruptcy case, the court found that exercising jurisdiction over

19  a receivership proceeding represent the "most efficient and expeditious manner" of resolving the

20  matter. *Id.* at 86.

21         **2.    Issuance of a Preliminary Injunction Pursuant to FRBP 7065**

22         Federal Rule of Bankruptcy Procedure 7065 provides for relief through a temporary

23  restraining order and preliminary injunction.   Generally, a party seeking preliminary injunctive

24  relief must demonstrate: (1) a strong likelihood of success on the merits, (2) the possibility of

25  irreparable injury to plaintiff if the preliminary relief is not granted, (3) a balance of hardships

26  favoring the plaintiff, and (4) advancement of the public interest.   Alternatively, a court may issue

27  a preliminary injunction if the moving party demonstrates either a combination of probable

28  success on the merits and the possibility of irreparable injury or that serious questions are raised

KAYE SCHOLER LLP

1    and the balance of hardships tips sharply in his favor. *Johnson v. Cal. State Bd. of Accountancy*,

2    72 F.3d 1427, 1430 (9th Cir. 1995).

3        **3.**    **Issuance of an Injunction Pursuant to 11 U.S.C. § 105(a)**

4            Courts, however, have held that where the action to be enjoined is one that threatens the

5    reorganization process, the moving party need not satisfy the requirements of Rule 65. *In re*

6    *Johns-Manville Corp.*, 91 B.R. 225, 227-28 (Bankr. S.D.N.Y. 1988) ("under § 105 . . . the

7    moving party need not demonstrate the more rigorous standards for a preliminary injunction

8    under Fed. R. Civ. P. Rule 65 such as irreparable harm") (citation omitted); *In re Neuman*, 71

9    B.R. 567, 571 (S.D.N.Y. 1987) ("[s]ince injunctions in bankruptcy cases are authorized by

10    statute, the usual equitable grounds for relief, such as irreparable damage, need not be shown");

11    *accord In re Chateaugay Corp.*, 93 B.R. at 29; *In re Ionosphere Clubs, Inc.*, 111 B.R. at 431; *In*

12    *re AP Indus., Inc.,* 117 B.R. 789, 802 (Bankr. S.D.N.Y. 1990).  Rather, the bankruptcy court may

13    issue an injunction "[w]here there is a showing that the action sought to be enjoined would

14    embarrass, burden, delay or otherwise impede the reorganization proceedings or if the stay is

15    necessary to preserve or protect the Debtor's estate and reorganization prospects." *In re Alert*

16    *Holdings, Inc.*, 148 B.R. 194, 200 (Bankr. S.D.N.Y. 1992) (debtors granted preliminary injunctive

17    relief to prevent competitors, *inter alia,* from diverting accounts which the competitor has

18    previously sold to the debtors).

19            In addition, the purpose of section 105(a) is to permit the court to "issue any order,

20    process or judgment that is necessary or appropriate to carry out the provisions of this title."  A

21    section 105(a) injunction here would support section 363 of the Bankruptcy Code, which permits

22    use, sale, or lease of property of the estate, outside the ordinary course of business, only after

23    notice and a hearing.  11 U.S.C. § 363(b).   As further discussed below, a section 105(a)

24    injunction here is necessary to insure that Farley does not use or dispose of his 100% ownership

25    interest in AGI outside of the ordinary course of business without notice and a hearing as required

26    under section 363 of the Bankruptcy Code.

27

28

KAYE SCHOLER LLP

**B.**    <u>Applying These Standards, the Court Should Grant FXI its Requested Relief</u>.

1.    <u>The Court Should Appoint a Receiver</u>.

FXI requests that this Court appoint a receiver, pursuant to its equitable powers pursuant to section 105(a) of title 11 of the United States Code, with a charge to take control of the affairs of AGI for discrete purposes.  A receiver is required to (a) ensure that AGI is not purposefully taking steps to disable itself from functioning or remaining in business and attempting to perform all of its obligations to all of its creditors including, but not limited, to FXI; and (ii) investigate the conduct of employees of the AGI company for the purpose of ensuring that no employees are acting in collusion to harm AGI or otherwise violating any duty to AGI under any employment contract and/or applicable law relating to trade secrets or intellectual property of AGI.

The facts extant in this case are nearly identical to those which were present in *Schlein,* and the same logic holds in this case as prevailed in *Schlein*.  Farley's 100% ownership interest in AGI is likely the reed on which any reorganization effort by Farley must hang.  His dissipation of AGI's assets would have such a significant effect on the bankruptcy estate that the Court can and should exercise jurisdiction and its equitable power under 105(a) to appoint a receiver over AGI, notwithstanding its status as a non-debtor.

FXI acknowledges that bankruptcy courts rarely have occasion to appoint a receiver.  As the *Schlein* case demonstrates, however, section 105(a) allows for such an equitable remedy when the facts justify it – and here, the facts justify it.   Farley, the sole owner of AGI, pledged his AGI stock to FXI as security for his obligation under the Guaranty.   Now, faced with a default under the Guaranty, Farley is threatening to obliterate the value of FXI's collateral by effectively moving the entire business of AGI to a new entity, which would be nothing more than AGI under a different name.   Farley is effectively holding the value of his company hostage to extract concessions from FXI that it is under no legal obligation to make.   FXI therefore submits that the appointment of a receiver over AGI is necessary to ensure that Farley does not carry out his fraudulent plan.   While it is utterly bizarre that Farley would so callously wave a red flag and openly declare his intention to make a fraudulent transfer in order to frustrate FXI's pursuit of its

KAYE SCHOLER LLP

1   contractual rights and remedies, that is in fact what he has done, and that the situation in which

2   FXI now finds itself.

3        FXI has identified Joel B. Weinberg of Insolvency Services Group, Inc. as an eminently

4   qualified candidate whom it would propose act as the Receiver over AGI.  In particular, FXI

5   believes that Mr. Weinberg's skill and experience in operating, rather than liquidating, businesses

6   make him well-suited for the role envisioned for the Receiver.  A copy of his *curriculum vitae*,

7   which demonstrates his extensive experience, is attached as Exhibit "C" hereto.

8        **2.**     **The Court Should Enjoin Farley and AGI from Transferring Any Assets of**

9   **AGI Without the Prior Approval of this Court.**

10       **(a)**     **A Rule 65 Preliminary Injunction is Warranted**.

11       FXI is entitled to the requested injunctive relief under the standards applied under Fed. R.

12  Civ. P. 65, made applicable to these proceedings by Bankruptcy Rule 7065.  In addition, and

13  independent of the Rule 65 analysis, a section 105(a) injunction is necessary and appropriate to

14  prevent an adverse effect on the bankruptcy estate through dissipation of assets, and non-

15  compliance with the notice and hearing provisions of section 363(b) of the Bankruptcy Code.

16       **(i)**     **FXI is likely to prevail on the merits of the claims set forth in the**

17  **Complaint**.

18       FXI asserts counts in Complaint for breach of contract; breach of the duty of good faith

19  and fair dealing; and breaches of fiduciary duty, both by AGI, as an insolvent, and Farley, as a

20  debtor-in-possession.   FXI is likely to prevail on the merits of these claims for the reasons stated

21  below.

22       Breach of Contract.  AGI is in default of its obligations under the Note and the Amended

23  Loan Agreement in that AGI has not satisfied its debt obligations thereunder to FXI.

24       In addition, AGI is in breach, or is in anticipatory breach, of its obligations under the

25  Amended Loan Agreement in that its senior management is threatening to cease to: (i) conduct

26  and operate its business substantially as they have been conducted, (ii) operate and maintain and

27  protect all franchises, permits, licenses, trademarks, trade names, and contracts, (iii) preserve all

28  the remainder of its material property used or useful in the conduct of its business and keep the

1   same in repair and condition, all of which paragraph 10(f) of the Amended Loan Agreement

2   expressly requires AGI to do.

3     These threats to cease operations, which would sacrifice the welfare of the business, to

4   serve the personal interests of Farley in his negotiations with its largest creditor, FXI, constitute a

5   breach or anticipatory breach.

6     <u>Breach of Duty of Good Faith and Fair Dealing.</u>   Under California law, in every contract

7   there is an implied covenant of good faith and fair dealing by each party not to do anything which

8   will deprive the other parties of the benefits of the contract. *Sutherland v. Barclays*

9   *American/Mortgage Corp.*, 53 Cal. App. 4th 299, 314, 61 Cal. Rptr. 2d 614 (1997); *Harm v.*

10   *Frasher*, 181 Cal. App. 2d 405, 415, 5 Cal. Rptr. 367, 373 (1960); *Seaman's Direct Buying Serv.,*

11   *Inc. v. Standard Oil Co.*, 36 Cal. 3d 752, 206 Cal. Rptr. 354 (1984), overruled on other grounds;

12   *Freeman & Mills, Inc. v. Belcher Oil Co.*, 11 Cal. 4th 85, 102-03, 44 Cal. Rptr. 420 (1995); see

13   also Witkin, Summary of California Law, Contracts, §743.  The covenant imposes on each party

14   to the contract the duty to refrain from doing anything which would render performance of the

15   contract impossible by any act of his own, and also the duty to do everything that the contract

16   presupposes that each party will do to accomplish its purpose. *April Enters., Inc. v. KTTV*, 147

17   Cal. App. 3d 805, 816, 195 Cal. Rptr. 421, 425 (1983).

18     Here, Farley has unjustly threatened to cause AGI to fraudulently dissipate substantial

19   value to another entity in order to irreparably deprive FXI of its ability to exercise its bargained-

20   for rights under the Note and Amended Loan Agreement.

21     <u>Breach of Fiduciary Duty of Director of an Insolvent Corporation.</u>   When a corporation is

22   insolvent, as plainly as AGI is, the corporate directors owe a duty to creditors to avoid actions that

23   divert, dissipate, or unduly risk corporate assets that might otherwise be used to pay creditors

24   claims.  They also have a duty to creditors to not engage in self dealing at or preferential

25   treatment at the creditors' expense. *See Berg & Berg Ents., LLC v. Boyle*, 178 Cal. App. 4th 1020

26   (Cal. Ct. App. 2009).

27     In this case, the corporate assets that are threatened to be dissipated are not necessarily the

28   hard assets of AGI, which presumably Farley would leave behind if he and his team were to

KAYE SCHOLER LLP

abandon AGI and which constitute the hard collateral for the debts owed by AGI both to Celtic

and to FXI.  Rather, the assets that he is threatening to dissipate are the complex of relationships,

including employment contracts, know-how, supplier and customer contacts that are currently in

place at AGI, but which he threatens to appropriate and use in other enterprises in which only he

would have an interest.  Not only is that dissipation of assets every bit as wrongful as dissipation

of a bank account or hard asset, it also, of course, constitutes self-dealing as he is using his role as

the person responsible for the oversight of the operations of AGI to in fact foment a plan whereby

the operations of AGI would be suspended for the express purpose of being used as a tool in an

effort to advantage himself at the expense of AGI's creditors.

       Breach of Fiduciary Duty of a Debtor in Possession.  In addition to the duties specified

under section 1106 of the Bankruptcy Code, the trustee in a reorganization case is a fiduciary who

has an obligation to treat all parties in the case fairly.  *See Sherr v. Winkler*, 552 F.2d 1367, 1374

(10th Cir. 1977), *citing Wolf v. Weinstein*, 372 U.S. 633 (1963).  As a fiduciary, the debtor in

possession owes the estate and its creditors a duty of loyalty, meaning that it may not act in its

self-interest.  As the Supreme Court stated in *Mosser v. Darrow*:

> Equity tolerates in bankruptcy trustees no interest adverse to the trust.  This is not
> because such interests are always corrupt but because they are always corrupting.
> By its exclusion of the trustee from any personal interest, it seeks to avoid such
> delicate inquiries as we have here into the conduct of its own appointees by exacting
> from them forbearance of all opportunities to advance self-interest that might bring
> the disinterestedness of their administration into question.

341 U.S. 267, 271 (1952); *see also In re Combined Metals Reduction Co.*, 557 F.2d 179 (9th Cir.

1977).

       In addition to the duty of loyalty, a trustee in a reorganization case is required to exercise

due care, diligence and skill as to both affirmative and negative conduct.  *See Sherr v. Winkler*,

552 F.3d at 1374; *see also Ford Motor Co. v. Weaver*, 680 F.2d 451 (6th Cir. 1982)(debtor in

possession has same fiduciary duties as trustee).  The standard of care, diligence, and skill that the

trustee owes the estate is that of an ordinarily prudent person in the conduct of his or her private

affairs under similar circumstances.  *See In re Johnson*, 518 F.2d 246 (10th Cir. 1975).

Debtors in possession owe the same fiduciary duties owed by trustees. "Debtors in possession and those who control them owe fiduciary duties to the bankruptcy estate. The fiduciary obligations consist of two duties: the duty of care and the duty of loyalty." *In re Brook Valley VII, Joint Venture*, 496 F.3d 892, 900 (8th Cir. 2007). The duty of loyalty of the debtor in possession is the same as the duty of a loyalty a trustee. The debtor in possession must not self-deal, cannot act with a conflict of interest, and must not take actions which are improper. *Id.; In re Coram Healthcare Corp.*, 271 B.R. 228, 25 (Bankr. D. Del. 2001).

Here, Farley undertook duties of loyalty and care when he filed a petition for relief under Chapter 11 of the Bankruptcy Code. He has an asset of value – his stock in AGI – and he is obligated to preserve and maximize that asset. He is not permitted to sacrifice that asset in his own self-interest, which is precisely what he will do if he carries out his threat to strip AGI of all of its value, transfer that value into a new entity, and install himself at the helm of that new entity. It is easy to see why that scenario carries so much appeal for Farley, but he has fiduciary duties that preclude him from injuring creditors for his benefit.

Thus, FXI is merely seeking to enjoin activity that Farley is prohibited from doing as a fiduciary. That is not to say that Farley cannot cause AGI to transfer its assets in *fulfillment* of his fiduciary duty, but that is a determination that must be made by this Court through the appropriate mechanism of notice and hearing under section 363, especially given his clear conflict of interest.

    **(ii)**    <u>**FXI will suffer irreparable harm if injunctive relief is not granted**</u>.

If AGI succeeds in ceasing operations and transferring all of its valuable tangible and intangible assets to another entity, the value of AGI will be destroyed irreparably, and FXI will lose the ability to collect the sums it owed from AGI, and from its collateral, which is the AGI stock of Farley. In this regard, it should be noted that an ability to *calculate* damages does not make a damages award an adequate remedy, if the plaintiff cannot collect the award. A judgment-proof defendant is not deterred by the threat of money damages, so under such a circumstance some other remedy, such as the contempt power, is essential. *See Aviara Parkway*

1  *Farms, Inc. v. Agropecuaria La Finca S.P.R. de R.L.*, 2009 U.S. Dist. LEXIS 7173 at *9 (S.D.

2  Cal. 2009), *citing Lakeview Tech., Inc. v. Robinson,* 446 F.3d 655, 657 (7th Cir. 2006).

3  　　　Irreparable injury, for the purposes of obtaining a preliminary injunction, can be

4  established where assets are likely to disappear unless the relief is granted (*Rubin v. Pringle (In re*

5  *Focus Media Inc.)*, 387 F.3d 1077, 1079-1081 (9th Cir. 2004)), the defendant has engaged in a

6  pattern of secreting or dissipating assets to avoid judgment (*Hilao v. Marcos (In re Estate of*

7  *Marcos)*, 25 F.3d 1467, 1480 (9th Cir. 1994)), a monetary remedy is inadequate due to the

8  impending insolvency of the defendant (*Id.*), or where the plaintiff will be unable to recover

9  assets to which it has a right (*F.T. Produce, Inc. v. Agwa, Inc.*, 2011 U.S. Dist. LEXIS 6013 (S.D.

10  Cal., January 21, 2011, Decided)).

11  　　　Thus, it would be facile to suggest that FXI is adequately protected by the prospect of a

12  damages award against AGI.   It is the very conduct threatened by Farley and AGI, and which

13  FXI seeks to enjoin, that would render AGI effectively judgment-proof, and forever deprive FXI

14  of the ability to realize on its collateral.

15  　　　　　　**(iii)**　　　**A Balancing of Harms and the Public Interest Support an**

16  　　　　　　　　　　**Injunction**.

17  　　　The granting of injunctive relief will not harm Farley and AGI, because either their threats

18  are sincere, in which case they will be enjoined from doing what they have no right to do, or their

19  threats are were just posturing, in which case they will be enjoined from doing what they do not

20  intend to do in any event.

21  　　　To the extent the public interest is implicated at all, a proactive injunction prohibiting a

22  blatant fraudulent transfer and breach of fiduciary duty that is in the making furthers the public

23  interest inherent in respect for fiduciary duties owed by an insolvent to its creditors as well as

24  principles of good faith and fair dealing.  Further, upholding the provisions of the Bankruptcy

25  Code, including section 363 and 1106, serves the public interest.

26  　　　　**(b)**　　　**A Section 105(a) Injunction is Necessary to Preserve the Estate in the**

27  **Face of a Threatened Fraudulent Transfer, which Adherence to Section 363 of the**

28  **Bankruptcy Code Would Prevent**.

KAYE SCHOLER LLP

1    Farley and AGI must be enjoined from carrying out their threats – namely, to shut down

2    the operations of AGI, transfer all of its valuable assets to a new entity, and leave AGI a hollow

3    shell from which its creditors can expect to receive nothing.   It is rare that a debtor will so openly

4    and brazenly announce its intentions to perpetrate a fraudulent transfer with actual intent to

5    hinder, delay, and defraud creditors, but that is precisely what Farley has done.   Such action

6    would not only harm creditors of AGI, but creditors of Chapter 11 debtor Farley as well.  His

7    100% ownership interest of AGI represents his most valuable asset, so any act of self-sabotage

8    has a direct and adverse effect on the bankruptcy estate. Therefore, Farley needs to be stopped

9    from taking this step, which would, in addition to damaging creditors, render any notion of a

10    successful Chapter 11 reorganization implausible.

11    Section 105(a) provides the Court with an additional basis, independent of Bankruptcy

12    Rule 7065, to issue an injunction.  An injunction against unauthorized transfer of AGI assets

13    would merely support application of section 363 of the Bankruptcy Code.  Section 363 permits a

14    trustee or debtor in possession to use or sell property of the estate, outside of the ordinary course

15    of business, only after notice and a hearing.  11 U.S.C. § 363(b)(1).

16    It is of course true that AGI is not itself a debtor in bankruptcy.  Farley, however, may not

17    "use" the powers inherent in his 100% ownership interest in AGI, which interest constitutes

18    property of his bankruptcy estate, without notice and a hearing.  Any disposition of AGI assets

19    outside of the ordinary course of business will be tantamount to a use or sale of property of the

20    estate, and for this reason, prior notice and hearing is required.

21    As of the commencement of his bankruptcy case, Farley owned 100% of the stock of AGI.

22    A stock ownership interest in a corporation wholly owned by the debtors becomes property of the

23    estate upon commencement of the case. *See In re Baker*, 68 B.R. 360, 363 (D. Or. 1986); *United

24    States v. Ken Int'l. Ltd.*, 184 B.R. 102, 107 (D. Nev. 1995*); In re Deak & Co.*, 63 B.R. 422, 427

25    (Bankr. S.D.N.Y. 1986) (under § 541(a), shares of stock controlled by debtor are property of the

26    estate); *In re MacDonald*, 114 B.R. 326, 333-34 (D. Mass. 1990) (property of the estate includes

27    stock in which debtor owned equitable interest); 11 U.S.C. § 541(a)(1) ("all legal or equitable

28    interest of the debtor in property as of commencement of the case" becomes property of the

1   estate.).  As debtor in possession, Farley has the power and duty to manage all of the assets of the

2   estate, including the stock of his wholly-owned corporation, AGI.  *In re Baker*, 68 B.R. 363-64.

3   11 U.S.C. § 363(b)(1) provides that "the trustee, ***after notice and a hearing***, may ***use***, sell, or

4   lease, other than in the ordinary course of business, property of the estate." (*emphasis added*)

5          Accordingly, bankruptcy court approval for use of Farley's AGI stock, which the

6   disposition of AGI assets through his exercise of his ownership rights would represent, is

7   necessary.  *See Milden v. Joseph (In re Milden)*, 1997 U.S. App. LEXIS 7726 (9th Cir. 1997).

8          Thus, an injunction against the unauthorized disposition of any assets of AGI is required

9   in order to disabuse Farley of his apparent notion that he is free to do with AGI as he pleases.

10  Farley is mistaken; he has responsibilities to creditors of both himself personally and AGI.

### IV.

### CONCLUSION

13         WHEREFORE, FXI respectfully requests that the Court:

14         1.      enter an Order appointing the Receiver, pursuant to its equitable powers pursuant

15  to section 105(a) of title 11 of the United States Code, with a charge to take control of the affairs

16  of AGI for the purpose of:

17                 (a)     insuring that AGI is not purposefully taking steps to disable itself from

18  functioning or remaining in business and attempting to perform all of its obligations to all of its

19  creditors including, but not limited, to FXI;

20                 (b)     investigating the conduct of employees of the AGI company for the

21  purpose of ensuring that no employees are acting in collusion to harm AGI or otherwise violating

22  any duty to AGI under any employment contract and/or applicable law relating to trade secrets or

23  intellectual property of AGI; and

24                 (c)     such other relief that is just and appropriate;

25         2.      enter an Order enjoining Farley and AGI from transferring any assets of AGI

26  outside of the ordinary course of business without notice and a hearing in this Court, pursuant to

27  its equitable powers under Bankruptcy Rule 7065 and/or Section 105(a) of the Bankruptcy Code;

28  ///

KAYE SCHOLER LLP

1         (a)     schedule an expedited hearing on the relief sought herein; and

2         (b)     grant such other and further relief as is appropriate under all the

3  circumstances.

4

5  DATED: February 14, 2011               COZEN O'CONNOR
                                              -and-
                                KAYE SCHOLER LLP

6

7                              By:

8                                 Ashleigh A. Danker
                             Attorneys for Plaintiff

9                             FOAMEX INNOVATIONS OPERATING
                             COMPANY

10

11

KAYE SCHOLER LLP

## DECLARATION OF ANDREW R. PRUSKY

I, Andrew R. Prusky, declare:

1.      I am the Senior Vice President, Legal of Foamex Innovations Operating Company ("FXI"), plaintiff in the above-captioned adversary proceeding.  I have personal knowledge of the facts set forth herein, except for those matters which are stated to be on information and belief, and, if called as a witness, could and would testify competently thereto.  As to matters which are stated to be on information and belief, such matters are true to the best of my knowledge, information and belief.  Capitalized terms not otherwise defined herein have the same meanings ascribed to them in the pleading to which this declaration is attached.

2.      I have been involved in discussions between FXI and representatives of both David Farley and Anatomic Global, Inc. ("AGI") over several weeks.  During the course of discussions I have had numerous discussions with representatives of Farley and/or AGI.

3.      AGI is represented by Robert A. Greenfield, of Stutman Treister & Glatt.  Mr. Farley is represented in a recently filed bankruptcy case by Marc J. Winthrop, of WinthropCouchot.  Brett J. Souza, of Bryan Cave LLP represents AGI in the proposed investment by Signet Group LLC described below.

4.      During the week of January 31, 2011, I had several discussions with representatives of Farley and AGI regarding a proposal made by Farley and AGI pursuant to which i) a portion of AGI would be acquired by another investor and ii) Farley, who owns 100% of the outstanding stock in AGI, would retain a substantial portion of the equity he owns in AGI. Also under the proposal, FXI would be paid substantially less than it was owed.   The investor was a Signet Group LLC whose principal is a Mr. Jamshid Keynejad.

5.      Representatives of AGI and/or Farley told me and other persons associated with FXI that unless FXI acceded to demands being made by Farley and AGI to accept the proposal there was a possibility that Mr. Farley would simply shut down AGI, and that AGI would be liquidated.

KAYE SCHOLER LLP

1     6.     This proposal was made in the context of a presentation by those representatives of

2    a liquidation analysis of AGI which showed, they asserted, that a liquidation would produce little

3    in the way of value for FXI against the substantial amount of moneys owed by AGI to FXI.

4     7.     On the evening of February 3, 2011 I was sent an email by Mr. Greenfield, a

5    bankruptcy lawyer at the Stutman firm who was retained by AGI in connection with a possible

6    bankruptcy filing by AGI, in which he alluded to those discussions involving the liquidation

7    values of AGI's assets.  This email was further to that discussion and contained information that

8    Mr. Greenfield had stated that he would provide to me.  A copy of that email is appended hereto

9    as Exhibit "A".

10     8.     Based upon the analysis set forth in the email, Mr. Greenfield stated that his view

11    was that FXI could expect to recover approximately only $1.4 million, before even  considering

12    the cost of the liquidation, which represents a small portion of the $6.8 million owed to FXI by

13    AGI.  The email ended with a statement that, "it would seem beyond dispute that FXI would do

14    substantially better accepting the offer of the investor."

15     9.     That was a reference to the discussions described above.

16     10.     At approximately the same time that e-mail was sent by Mr. Greenfield, 5:27 p.m.

17    on February 3, 2011, I received an email from Mr. Souza, a lawyer at the Bryan Cave firm, who

18    represents AGI in connection with the offer by Signet.  Mr. Souza's email is appended hereto as

19    Exhibit "B."

20     11.     Mr. Souza stated in the e-mail that he had called my cell phone and missed me.

21    He wrote the e-mail to state that he called about two items, the first being a call-in number for a

22    call to take place later, and the second to state to me that he had "a couple of items to discuss with

23    me."  He did not identify the items.  He eventually reached me later that day at approximately

24    7:30 p.m.

25     12.     Mr. Souza told me that he had had an opportunity to speak directly with David

26    Farley since we had last discussed the suggestion by AGI and Farley that it would be in the best

27    interest of FXI to accept the offer being made at that time by AGI, and the reference to the

28    possibility that AGI would be liquidated.

KAYE SCHOLER LLP

13.    He stated that further to that discussion he had had an opportunity to speak again to David Farley directly on that subject.

14.    He told me that he wanted to confirm and tell me directly that Mr. Farley and "his team," in the event that FXI did not accept the offer that had been made, would follow either one of two courses. Mr. Souza said they would either leave AGI and form an entity to be engaged in substantially the same business as AGI is currently engaged in, obtaining financing from Signet, or they would join another company already in existence that was controlled by Mr. Keynejad or his affiliate(s) and use it as the vehicle to engage in substantially the same business as AGI.

15.    He told me that he wanted to inform me this personally because he wanted to make sure that FXI understood that the statements made in the prior days regarding the advisability of FXI's accepting the offer were in fact true and backed up by this more detailed information directly from Mr. Farley.

16.    Mr. Souza told me that this made it apparent that FXI would receive significantly more value this way than if AGI were to liquidate.

17.    This conversation took place in the context of the ongoing conversations that week in which it was aggressively suggested that FXI had no choice but to accept the offer being made. Based upon the context of the discussions that we had been having and continue to be having I do not view this to be mere posturing.    Also, I believe it to be significant that Mr. Souza reached out to tell me these things in a personal phone call (and then e-mailed me to ask me to call him when he did not reach me) at the precise same time that Mr. Greenfield sent me the e-mail containing the liquidation analysis described above.    I view these statements to be an actual threat purposely delivered to FXI in an oral communication made to it contemporaneously with the forwarding of the written liquidation analysis from the AGI.

///

///

///

1       18.    Based on these representations FXI believes that Farley is in fact intending, to

2 abandon AGI as he has threatened to do, unless FXI consents to the offer that has been made by

3 the Signet Group.

4       I declare under penalty of perjury under the laws of the United States of America that the

5 foregoing is true and correct.

6       Dated: February 14, 2011

7       ANDREW R. PRUSKY

**EXHIBIT A**

**From:** Greenfield, Robert A. [mailto:RGreenfield@Stutman.com]
**Sent:** Thursday, February 03, 2011 5:27 PM
**To:** Prusky Andrew; ebaxter@cozen.com; AAbramowitz@cozen.com
**Cc:** SSUNSHINE@bryancave.com; Souza, Brett; Mercer, Jim; Karasik, Eve H.
**Subject:** AGI

When we talked the day before yesterday, we discussed the liquidation values of the AGI assets.  During that call I promised you more information than I had at the time.  I now have that information.

Attached is the most recent unaudited financial statement of AGI as of 12/31/10 that was just given to me by the company.  I have gone over the financial statement with David Farley and AGI's CFO.  Based upon that discussion, what follows is the company's opinion as to the liquidation values of AGI's assets:

(1) The negative cash represents additional accounts payable. When added to the accounts payable "aged," and "off aging" (or accrued), the payables to FXI were approx. $2.2 million and the additional accounts payable were approx. $1.1 million.

(2) The inventory has been broken down by categories.  The company's estimates of liquidation values are zero for WIP, 30% for finished goods, 40% for other materials (fabric), 70% for foam and foam scrap, and 5% for Koenig (special hardware).  The total liquidation value of the inventory is, therefore, approx. $500,000.

1

Exh. A  025

(3) The company estimates that the liquidation value of the accounts receivables will be approx. 70% of the face amount of the receivables or approx. $2.0 million given the difficulties in collecting accounts receivables in a manufacturing setting where warranty claims may be asserted.  After subtracting the senior obligation owed to Celtic Capital of approx. $1.3 million, that would leave approx. $700,000.

(4) Prepaid expenses is an accounting entry and would not generate any value on liquidation.

(5) The company believes that they would be lucky to generate 10 cents on the dollar for the fixed assets, or approx. $200,000.  Apparently the M&E is old.

(6) It is the company's view that the Other Assets would not generate any value.  The investment in EMF (Eco Memory Foam) was for R&D and is not recoverable.  The same would be said for the investment in EMI (E Comfort Mattress).  The Note Receivable is from a charity for the Haitian Relief Effort and is not collectable.  The organization development costs have no value.

Based on the foregoing, for Fix's claim of approx. $6.8 million as of 12/31/10, FXI would expect to recover approx. $1.4 million without considering costs of liquidation.  If the company has underestimated the liquidation value by as much as 50%, the recovery for FXI would not exceed $2.8 million.  Therefore, the FXI shortfall would likely range from between $4.0 million to $5.4 million.  Of course, FXI can do its own liquidation analysis based on the foregoing information, but it would seem beyond dispute that FXI would do substantially better accepting the offer of the investor.

Let me know if you have any questions.  I will be in my office all afternoon.


Robert A. Greenfield
Stutman, Treister & Glatt PC
1901 Avenue of the Stars, 12th Floor
Los Angeles, California 90067
Tel: 310-228-5630
Fax: 310-228-5788
Cell: 310-429-7878
e-mail: rgreenfield@stutman.com


*************************************************************
This Internet e-mail contains confidential information
which is intended only for the addressee and which may
be privileged under applicable law.  Do not read, copy
or disseminate it if you are not the addressee.  If you
have received this message in error, please notify the
sender immediately and delete it.  Thank you.
*************************************************************

This email message is intended only for the named recipient(s) above and may contain, together with any attachment(s), confidential information that is privileged. If you are not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this message and any attachment(s) is strictly prohibited. If you have received this message in error, please immediately advise the sender by replying to this message and delete all copies of this message and any attachment(s).

Exh. A  026

ANATOMIC GLOBAL, INC.
BALANCE SHEET
FOR THE PERIOD ENDED DECEMBER 31, 2010

|  | YEAR TO DATE ACTUAL |
|---|---|
| **ASSETS** | |
| **CURRENT ASSETS** | |
| CASH | (114,246.26) |
| WORK IN PROCESS | 25,511.91 |
| INVENTORY - FINISHED | 403,212.45 |
| INVENTORY - OTHER MATERIALS | 730,424.13 |
| INVENTORY - FOAM | 105,244.37 |
| INVENTORY - FOAM SCRAP | 49,224.00 |
| INVENTORY - KOENIG | 89,168.00 |
| ACCOUNTS RECEIVABLE PER AGING | 2,834,075.94 |
| PREPAID EXPENSES | 487,786.33 |
| FXI SCRAP/CREDITS PENDING | 44,075.87 |
| **TOTAL CURRENT ASSETS** | 4,654,476.74 |
| **FIXED ASSETS** | |
| PLANT EQUIPMENT | 2,495,668.46 |
| LAS VEGAS SHOWROOM | 139,724.75 |
| OFFICE EQUIPMENT | 181,770.56 |
| LEASEHOLD IMPROVEMENTS | 286,934.56 |
| ACCUMULATED DEPRECIATION | (1,189,597.61) |
| **TOTAL FIXED ASSETS** | 1,914,500.72 |
| **OTHER ASSETS** | |
| DEPOSITS | 62,217.87 |
| INVESTMENT IN EMF | 851,517.06 |
| NOTE RECEIVABLE | 560,564.59 |
| ORGANIZATION DEVELOPMENT COSTS | 576,681.50 |
| ACCUMULATED AMORTIZATION | (337,152.72) |
| INVESTMENT IN EMI | 2,713,049.05 |
| **TOTAL OTHER ASSETS** | 4,426,877.35 |
| **TOTAL ASSETS** | 10,995,854.81 |

Exh. A  027

ANATOMIC GLOBAL, INC.

FOR THE PERIOD ENDED DECEMBER 31, 2010

|  | YEAR TO DATE ACTUAL | |
|---|---|---|
| **LIABILITIES AND STOCKHOLDERS EQUITY** | | |
| **CURRENT LIABILITIES** | | |
| ACCOUNTS PAYABLE PER AGING | 3,251,573.33 | |
| ACCOUNTS PAYABLE OFF AGING | 13,793.46 | |
| ACCRUED TAXES | 5,725.54 | |
| GARNISHMENTS | 234.46 | |
| CURRENT PORTION - PCN BANK | 30,496.05 | |
| NOTE PAYABLE - PROVIDERS | 3,819.06 | |
| WORKING CAPITAL LINE OF CREDIT | 1,353,260.86 | |
| TOTAL CURRENT LIABILITIES | | 4,658,902.76 |
| **LONG TERM DEBT** | | |
| NEGOTIATED VENDOR DEBT (NVD) | 4,587,298.38 | |
| NOTE PAYABLE - OFFICER | 20,000.00 | |
| NOTE PAYABLE - PCN BANK | 45,806.51 | |
| TOTAL LONG TERM DEBT | | 4,653,104.89 |
| TOTAL LIABILITIES | | 9,312,007.65 |
| **STOCKHOLDERS EQUITY** | | |
| STOCK (ISSUED & SUBSCRIBED) | 84,239.20 | |
| ADDITIONAL PAID-IN CAPITAL | 1,080,051.66 | |
| RETAINED EARNINGS - PRIOR YRS | 313,020.58 | |
| RETAINED EARNINGS - CURR YEAR | 206,535.72 | |
| TOTAL STOCKHOLDERS EQUITY | | 1,683,847.16 |
| TOTAL LIABILITIES AND STOCKHOLDERS | | 10,995,854.81 |

Exh. A 028

ANATOMIC GLOBAL, INC.
COMPARATIVE INCOME STATEMENT
FOR THE TWELVE PERIODS ENDED DECEMBER, 2010

| | PERIOD TO DATE | | YEAR TO DATE | |
|---|---|---|---|---|
| | ACTUAL | % | ACTUAL | % |
| LINGS: | | | | |
| SALES | 3,119,258.91 | 105.4 | 27,400,093.21 | 107.7 |
| REBATES | (3,894.79) | (.1) | (18,600.18) | (.1) |
| RETURNS | (36,665.33) | (1.2) | (504,658.65) | (2.0) |
| NET BILLINGS | 3,078,698.79 | 104.1 | 26,876,834.38 | 105.7 |
| TRIBUTION EXPENSES | 119,862.28 | 4.1 | 1,444,326.84 | 5.7 |
| NET SALES | 2,958,836.51 | 100.0 | 25,432,507.54 | 100.0 |
| ST OF GOODS SOLD: | | | | |
| FOAM | 1,470,293.33 | 49.7 | 12,504,765.82 | 49.2 |
| MATERIALS | 534,677.44 | 18.1 | 4,215,180.33 | 16.6 |
| DIRECT LABOR | 264,034.31 | 8.9 | 1,828,080.59 | 7.2 |
| PLANT SUPERVISION | 11,990.02 | .4 | 118,337.27 | .5 |
| PAYROLL TAX | 19,334.84 | .7 | 188,032.24 | .7 |
| WORKERS COMP INS | 16,553.92 | .6 | 139,585.85 | .5 |
| MEDICAL INSURANCE | 1,423.31 | .0 | 8,670.89 | .0 |
| COST OF GOODS SOLD BEFORE OVERHEAD: | 2,318,307.17 | 78.4 | 19,002,652.99 | 74.7 |
| GROSS PROFIT BEFORE OVERHEAD | 640,529.34 | 21.6 | 6,429,854.55 | 25.3 |
| CONTRIBUTION MARGIN | 640,529.34 | 21.6 | 6,429,854.55 | 25.3 |
| ERHEAD: | | | | |
| LDING LEASE | 70,316.98 | 2.4 | 749,943.62 | 2.9 |
| EQUIPMENT LEASE | 8,502.71 | .3 | 58,943.01 | .2 |
| UTILITIES | 11,120.94 | .4 | 121,956.35 | .5 |
| MACHINE MAINTENANCE AND TOOL | 19,354.20 | .7 | 284,832.08 | 1.1 |
| GENERAL LIABILTY | 2,394.02 | .1 | 28,728.24 | .1 |
| DEPRECIATION | 12,451.00 | .4 | 149,412.00 | .6 |
| VEHICLE OPERATION | 3,599.55 | .1 | 31,840.30 | .1 |
| TOTAL OVERHEAD | 127,739.40 | 4.3 | 1,425,655.60 | 5.6 |
| GROSS PROFIT | 512,789.94 | 17.3 | 5,004,198.95 | 19.7 |
| ES EXPENSES | | | | |
| SALARIES - SALES | 13,646.00 | .5 | 193,954.46 | .8 |
| COMMISSIONS | 38,473.32 | 1.3 | 532,017.06 | 2.1 |
| SUPPORT SALARIES - SALES | 5,384.62 | .2 | 66,923.10 | .3 |
| MARKETING | 33,006.39 | 1.1 | 455,875.72 | 1.8 |
| LODGING - SALES | 2,462.01 | .1 | 32,155.74 | .1 |
| TRAVEL - SALES | 8,078.09 | .3 | 61,678.38 | .2 |
| AUTO - SALES | 1,611.38 | .1 | 16,675.93 | .1 |
| PAYROLL TAXES - SALES | 1,895.34 | .1 | 12,088.34 | .0 |
| WORKERS COMP INS - SALES | 97.49 | .0 | 1,410.42 | .0 |
| MEDICAL INSURANCE - SALES | 1,639.00 | .1 | 18,033.73 | .1 |
| TOTAL SALES EXPENSES: | 106,293.64 | 3.6 | 1,390,812.88 | 5.5 |
| ERAL & ADMINISTRATIVE EXPENSES | | | | |
| SALARIES - ADMIN | 58,156.25 | 2.0 | 705,653.75 | 2.8 |
| SUPPORT SALARIES - ADMIN | 92,894.50 | 3.1 | 906,494.42 | 3.6 |
| AUTO - ADMIN | 4,093.28 | .1 | 51,454.55 | .2 |
| STAFF MEETINGS | 1,525.82 | .1 | 3,037.10 | .0 |
| OFFICE SUPPLIES & SUBSCRIPTION | 25,008.44 | .8 | 82,306.60 | .3 |
| TELEPHONE | 5,276.28 | .2 | 63,033.70 | .2 |
| POSTAGE | 314.63 | .0 | 6,067.39 | .0 |
| PRODUCT LIABILITY INSURANCE | 762.83 | .0 | 9,153.96 | .0 |
| PROFESSIONAL,LEGAL & CONSULTNG | 24,154.78 | .8 | 331,847.65 | 1.3 |
| PAYROLL TAXES - ADMIN | 79.48 | .0 | 63,825.19 | .3 |
| WORKERS COMP INS - ADMIN | 265.30 | .0 | 3,345.87 | .0 |
| MEDICAL INSURANCE - ADMIN | 19,432.76 | .7 | 177,143.64 | .7 |
| OFFICE DEPRECIATION EXPENSE | 1,086.70 | .0 | 13,040.40 | .1 |
| BAD DEBT EXPENSE | 52,143.94 | 1.8 | 78,261.06 | .3 |
| TAXES, LICENSES, & FEES | 19,579.47 | .7 | 238,080.39 | .9 |
| TOTAL G & A EXPENSES | 304,774.46 | 10.3 | 2,732,745.67 | 10.7 |
| AL OPERATING EXPENSES | 411,068.10 | 13.9 | 4,123,558.55 | 16.2 |
| INCOME FROM OPERATIONS | 101,721.84 | 3.4 | 880,640.40 | 3.5 |
| NTEREST | 30,979.31 | 1.0 | 237,613.67 | .9 |
| OTHER EXPENSES (INCOME) | .00 | .0 | (18,277.44) | (.1) |
| AMORT OF INTANG INVEST | 14,048.03 | .5 | 168,576.36 | .7 |
| DISCOUNT EXPENSE | 27,112.64 | .9 | 286,192.09 | 1.1 |
| NET INCOME BEFORE TAX | 29,581.86 | 1.0 | 206,535.72 | .8 |
| NET INCOME (LOSS) | 29,581.86 | 1.0 | 206,535.72 | .8 |

Exh. A  029

**EXHIBIT B**

**From:** Souza, Brett [mailto:bjsouza@bryancave.com]
**Sent:** Thursday, February 03, 2011 5:27 PM
**To:** Prusky Andrew
**Subject:**

Hi

I left a voicemail on your cell phone.

I called about two items.

1.  Is there a call-in number for the call at 6:30?

2.  I have a couple of items to discuss with you.


*Brett J. Souza*
(949) 223-7119  (Direct)
(949) 701-0733  (Cell)

---

This electronic message is from a law firm. It may contain confidential or privileged information. If you received this transmission in error, please reply to the sender to advise of the error and delete this transmission and any attachments.

IRS Circular 230 Disclosure: To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing, or recommending to another party any transaction or matter addressed herein.
bcllp2010
This email message is intended only for the named recipient(s) above and may contain, together with any attachment(s), confidential information that is privileged. If you are not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this message and any attachment(s) is strictly prohibited. If you have received this message in error, please immediately advise the sender by replying to this message and delete all copies of this message and any attachment(s).

**EXHIBIT C**

Exh. C 032

**JOEL B. WEINBERG**
Insolvency Services Group, Inc.
9107 Wilshire Boulevard, Suite 800
Beverly Hills, California 90210
Telephone: (310) 385-0006
Facsimile: (310) 385-0030
E-mail: jweinberg@usisg.com

## EDUCATION

**LOYOLA MARYMOUNT UNIVERSITY
LAW SCHOOL**
Juris Doctor, Cum Laude, 1981
5th in Class
Member: St. Thomas Moore Law Honor Society
President Tax Law Society

**STANFORD UNIVERSITY**
Bachelor of Arts, 1977

## EMPLOYMENT

2001-Present      **INSOLVENCY SERVICES GROUP, INC.,**
President, CEO and Founder
Providing insolvency related services including, acting as an assignee for the benefit of creditors, serving as a chapter 11 plan disbursing and liquidating agent, state and federal court receiverships and acting as a responsible person in a liquidating chapter 11 case.

2001- Present      **LOYOLA MARYMOUNT UNIVERSITY** Adjunct professor of law (Bankruptcy).

Spring 1993 -      **BIEGENZAHN WEINBERG**
3/31/03              Founding Partner
Specializing in commercial insolvency and bankruptcy matters in representing commercial debtors, committees of creditors, secured creditors and trustees

January 1991 -    **HONIGMAN MILLER SCHWARTZ AND COHN**
Spring 1993       Partner, Los Angeles office
Specializing in commercial insolvency and bankruptcy matters

Spring 1989 -     **SMITH & WEINBERG**
December 1990   Founding Partner
Specializing in commercial insolvency and bankruptcy matters

Exh. C 033

| | |
|---|---|
| Winter 1987 -<br>Spring 1989 | **BUCHALTER, NEMER, FIELDS & YOUNGER**<br>Associate<br>Specializing in commercial insolvency and bankruptcy matters with<br>emphasizing secured creditor representation |
| Winter 1984 -<br>Winter 1987 | **LEVENE & EISENBERG**<br>Associate<br>One of the initial lawyers with the firm, specializing in commercial<br>insolvency and bankruptcy matters; primarily commercial debtor<br>representation |
| Summer 1981 -<br>Winter 1984 | **PACHT, ROSS, WARNE, BERNHARD & SEARS**<br>Associate<br>Experience in tax, real property, corporate and bankruptcy law |

## PUBLICATIONS

Author, *California General Assignments: Still Alive, Kicking and Useful,* **29, No. 2 California Bankruptcy Journal**

Author, *Debtor Beware,* 28 Los Angeles Lawyer (October 2005), 8 [Cover Article]

Author, *General Assignments for the Benefit of Creditors: An Alternative To Bankruptcy,* **19 CEB Cal Bus L Prac (Spring 2004)**

Co-author, *Personal and Small Business Bankruptcy Practice in California,* CEB, Publication January, 2003.

Author, *Non-Bankruptcy Alternatives for the Financially Distressed Business,* 97 Business Credit (October 1995), 19

Author, *Chapter And Verse,* 18 Los Angeles Lawyer (June 1995), 32

Co-Author, *Braniff v. BPA: The Legal Tussle,* 20/21 Aircraft Leasing 6, Dec. 1989

Co-Author, *Serving on the Creditors' Committee: Considerations and New Developments,* Annual Survey of Bankruptcy Law 1988, Callaghan & Co.

Author, *Selected Topics in Adequately Protecting and Compensating a Secured Creditor,* Beverly Hills Bar Association Journal, #1, Winter, 1984-1985

## PROFESSIONAL

## ASSOCIATIONS

| | |
|---|---|
| 2008 - present | Member, Board of Directors of the Los Angeles Bankruptcy Forum |
| 2008 | Conference Co-Chair for the California Bankruptcy Conference |
| 2003 - present | Member of Los Angeles Chapter of the California Receivers Forum Attended Loyola II (October, 2004) |
| 1995 - 2004 | Member, Editorial Board of *California Bankruptcy Journal* |
| 1992 - 1995 | Member, Board of Directors of the Los Angeles Bankruptcy Forum |
| 1986 - 1989 | Member, Debtor/Creditor Relations and Bankruptcy Committee of the Business Law Section of the State Bar of California |
| 1998- present | Bankruptcy Mediator (Certificate of recognition 1998-1999) |
| 1983 - present | Member, Financial Lawyers Conference and Los Angeles Bankruptcy Forum |
| 1987 - present | Lectured extensively on a number of insolvency related topics. List of topics available on request. |
| 1996- 2004 | Member, Editorial Board of *Los Angeles Lawyer* Magazine |
| 1997- 2000 | Business Law And Real Property Section Co-chair, San Fernando Valley Bar Association. |

## RECENT ENGAGEMENTS

| | |
|---|---|
| Receiver[1] | Serving as a receiver appointed by the United States District Court for the Central District of California as a collateral receiver in the case entitled *Bank of America N.A. v. G&S Co. dba McMahan's Furniture*, Clerk's docket no. 2:10-cv-01901-GW. The receiver is charged with liquidating the business operations of the company as well as managing and disposing of four parcels of improved commercial real estate. The matter is still pending. |
| Assignee | Serving as assignee for the benefit of creditors of *OncoTech, Inc.*, under a general assignment taken on June 14, 2010. The debtor was in the business |

---

[1]    In receivership matters Joel B. Weinberg was individually employed -- as rules of court (state and federal) require that only individuals may be receivers. In all other matters, general assignments and bankruptcy matters, ISG was engaged as the fiduciary .

Exh. C 035

of providing testing services relating to cancer pathology. The company employed more than 70 employees and the liquidation will involve the disposition of radioactive and hazardous materials. ISG has begun the process of organizing the liquidation of the company assets and will proceed to administer creditor claims and take all steps necessary to conclude the administration of the assignment estate. The matter is still pending.

Assignee                Serving as an assignee for the benefit of creditors of *MatchFrame Video, LLC*, under a general assignment taken on June 11, 2010. The debtor was a video post production company providing services to the television industry through customers, including Warner Brothers. The company employed more than 100 employees and occupied over 60,000 of space for its operations. The assignee will be liquidating all tangible and intangible property and will administer all aspects of the liquidation thorough filing of final tax returns. The matter is still pending.

Assignee                Serving as an assignee for the benefit of creditors of *Carlson & Co.* under a general assignment for the benefit of creditors taken on April 29, 2010. The debtor was in the business of construction large works of art for conceptual artists, including without limitation Jeff Koons. This is a straight liquidation and the assignee will administer the estate and its claims and take all steps incident to closing the assignment estate.

Assignee                Serving as an assignee for the benefit of creditors of *Krikorian Premiere Theatres, Inc.* under a general assignment for the benefit of creditors taken on May 13, 2010. The debtor was in the business of managing a chain of movie theatres through out Southern California. The assignee is liquidating all of the assets of the company and will take all steps necessary to conclude the administration of the assignment estate including the processing of what a significant dividend to unsecured creditors.

Assignee                Serving as an assignee for the benefit of creditors of *Veoh Networks, Inc.*, under a general assignment taken on February 24, 2010. The debtor was a provider of internet based video content and related services to viewers. The assignee facilitate the marketing and sale of the company's assets as a going concern which culminated in a public sale following competitive bidding. The sale resulted in significant proceeds available for dividends to unsecured creditors, among others. The assignee has established a claims vetting process and is conducting all other administrative aspects attendant to its fiduciary role as an assignee, including compliance with all tax filing requirements. The assignee is also pursuing significant litigation which is expected to yield substantial additional proceeds for the benefit of the estate. The matter is still pending.

Exh. C 036

Assignee

Serving as an assignee for the benefit of creditors of the following affiliated group under general assignments dated January 28, 2010: *Taryn Rose International, Inc., Taryn Rose New York, Inc., Taryn Rose Las Vegas, Inc., Taryn Rose Retaill, LLC, Taryn Rose Santana, LLC.* Taryn Rose was the seller of high end womens shoes marketed through retailers such as Saks Fifth Avenue and Neiman Marcus. The Assignee sold the assets as a going concern following an extensive marketing campaign. Those sale efforts successfully culminated in net proceeds sufficient to make a significant dividend to unsecured creditors. The assignee has proceeded with the administration of the case including closing all remaining facilities, liquidation of all assets not included in the going concern sale, establishing the creditor claims process, communication to creditors and preparation of all requisite tax returns and governmental filings. The matter is still pending.

Assignee

Serving as an assignee for the benefit of creditors of *Organic Milling* under a general assignment taken in December of 2009. The debtor was a significant manufacturer of natural cereal products for under its own label as well as for private labeling for major retail chains. The assignee facilitated the sale of the company as a going concern. Its operations had in excess of 100 employees. As a consequence the company was sold as a going concern and the jobs of most if not all of the employees were preserved. The sale resulted in a net dividend to creditors. As assignee we vetted creditor claims, set up a claims procedure, managed all post closing matters including, without limitation, preparation and filing of all final tax returns, completing the claims process and giving all appropriate notices.

Receiver

Appointed state court receiver on November 20, 2009 in the case of *Brandenberg v. Hydra, LLC*, Case no. SC 105733, pending in the California Superior Court of Los Angeles. The appointment was made at the behest of the minority equity security holder and with the consent of Wells Fargo Bank. The receivership involved managing and overseeing the day to day operations of the debtor company and to sell the company as a going concern. The receiver's efforts culminated in a sale and payment of the secured claim of Wells Fargo Bank.

Assignee

Serving as assignee for the benefit of creditors of *Long Beach Automotive Distributors, Inc.*, since May 18, 2009. The debtor was a significant distributor of automotive and marine engine parts. As assignee, ISG operated the debtors business for in excess of 180 days consisting of in excess of 13 stores and multiple warehouse locations. ISG's efforts culminated in a sale of substantially all of the debtor's assets on a going concern basis resulting in (a) payment in full of PNC Bank, which was owed in excess of $18,000,000.00, and (b) a significant surplus for unsecured creditors. ISG managed significant operating issues as well as all matters related to the closing of business operations, liquidation of the estate and administration of all creditor claims.

| Receiver | Appointed Federal Court Receiver on May 15, 2009 in the case of *FCC, LLC v. The Silk Trading Co., Inc.*, Case No. CV 09-3464-DSF(PJWx), pending in the United States District Court for the Central District of California. The appointment was made at the best of the secured creditor to protect its collateral, operate store locations through out the United States, and to sell the assets as a going concern, including a fee interest in a significant warehouse/office/store located in the Los Angeles Area. |
|---|---|
| Receiver | Appointed State Court Receiver on April 8, 2009 in the case of *In re Better Office Products,* Case No. PS011546, pending in the Los Angeles County Superior Court. The appointment was made in connection with the liquidation of the Debtor corporate entity and with the consent of Comerica Bank to take possession of and to preserve and protect the Bank's collateral. At present we are in the process of soliciting offers and proceeding with liquidation of the Debtor's assets, including the Bank's collateral. The Debtor operated out of office and warehouse space in the aggregate amount of approximately 100,000 square feet. |
| Receiver | Appointed Federal Court Receiver by the United States District Court for the Southern District of California in the case entitled *LaSalle Bank National Association v. Comair Rotron, Inc.*, Case No. 08-cv-1387 DMS(POR). I was appointed to take custody of the Bank's collateral and to operate the debtor's business (which collectively employed over 200 employees) and effectuate a sale of the same. The role of the receiver was expanded by the court during the case beyond the role of a collateral receiver. This matter involved a parent company with three subsidiary corporations with operations in the United Kingdom, Mexico and Shanghai. Although most of the assets have now been sold the matter is still pending. |
| Receiver | Appointed State Court Receiver in *In re Advance Building Maintenance, Inc.* Superior Court of the State of California, County of Los Angeles, Case no. SS016358.  Preserve, manage and operate petitioner's building maintenance business and package, market and sell the business as a going concern, process creditor claims and provide for distribution to creditors and others. This matter is still pending. |
| Assignee | Serving as the assignee for *Royal Truck Bodies, Inc. Royal*, a significant manufacturer of utility truck bodies used in the trades such as plumbing and electrical. We are presently liquidating inventory and also preceeding with the marketing and sale of all of the companies assets.  As assignee we will process and deal with all creditor claims and take all steps necessary to wind down the affairs of the debtor, including the filing of all tax returns and the like. |
| Assignee | Served as assignee for the benefit of creditors for *Lansco Die Casting, Inc.* |

Exh. C 038

Liquidated a major aluminum die casting operation in the city of industry involving in excess of 70 employees, managed the wind down conducted the sale of the debtor's business which included machinery and equipment occupying in excess of 50,000 square feet. Managed and resolved substantial environmental issues. Processed creditor claims and completed all matters related to the liquidation of the debtor's business. This matter is still pending but largely concluded.

**Assignee**      Served as an assignee for the benefit of creditors of *Import Stone, Inc.* Sold the debtor's business as a going concern which involved operations in 4 states.  Processed creditor claims and completed all matters related to the liquidation of the debtor's business.

**Trustee**      Serving as the liquidating trustee under a confirmed chapter 11 plan of reorganization in the case entitled *In re The Legacy Estate Group, LLC,* pending in the United States Bankruptcy Court for the Northern District of California, Santa Rosa Division as case no. 05-14659 AJ11.  The matter involved the sale of 3 wineries for $97,000,000, prosecution of claims be longing to the bankruptcy estate and the resolution, vetting and payment of a host of creditor claims. Also responsible for filing all tax returns and closing the matter. Although largely concluded there are few administrative matters remaining.

**Trustee**      Serving as a liquidating trustee under a confirmed liquidating plan in the case of *In re Three Way, Inc.* pending in the United States Bankruptcy Court for the Northern District of California, San Jose Division as case No. 03-56103-MM-  11.  The matter involved the sale of the debtor's logistics business and the prosecution of claims be  longing to the bankruptcy estate and the resolution, vetting and payment of a host of creditor claims. Also responsible for filing all tax returns and closing the matter. This matter is largely concluded.

For the sake of brevity there are large numbers of relevant matters which have not been listed. However descriptions of other engagements are available on request.

F:\Users\jbw\MARKETING\CURRENT CV'S\JBW-Resume-03-25-10.wpd[2]

| In re:  DAVID L. FARLEY | CHAPTER 11 |
|---|---|
| Debtor. | CASE NUMBER 6:11-bk-12031-DS |
| | Adv. Proc. No. 6:11-ap- 01131-DS |

**Note:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

1999 Avenue of the Stars, Suite 1700
Los Angeles, California  90067

The foregoing document described as *Notice Of Motion And Motion For (1) Appointment Of A Receiver And (2) Preliminary Injunction; Memorandum Of Points And Authorities In Support Thereof; Declaration Of Andrew R. Prusky In Support Thereof* will be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner indicated below:

☒    **I. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document.  On **February 14, 2011,** I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

☒ Service information continued on attached page

☒    **II. SERVED BY U.S. MAIL OR OVERNIGHT MAIL(indicate method for each person or entity served):** On **February 14, 2011,** I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. *Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.*

☒ Service information continued on attached page

☐    **III. SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to Fed. R. Civ. Proc. 5 and/or controlling LBR, on _____, **2011,** I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. *Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.*

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| February 14, 2011 | Shahnaz Virani | _____ |
|---|---|---|
| Date | Type Name | Signature |

**SERVICE LIST**
**In re David L. Farley**
**USBC, CDCA Case No. 6:11-bk-12031-DS**
**Adv. Proc. No. 6:11-ap-01131- DS**

## I. SERVED ELECTRONICALLY VIA NEF:

- **Marc S Cohen**    mcohen@kayescholer.com
- **Ashleigh A Danker**    adanker@kayescholer.com
- **United States Trustee (RS)**
  **ustpregion16.rs.ecf@usdoj.gov**
- **Marc J Winthrop**
  **mwinthrop@winthropcouchot.com,**
  **pj@winthropcouchot.com**

## II. SERVED VIA OVERNIGHT MAIL:

**Honorable Deborah J. Saltzman**
U.S. Bankruptcy Court
3420 Twelfth Street, Ste. 384
Riverside, CA 92501

**United States Trustee**
Elizabeth A. Lossing, Esq.
3685 Main Street, Ste. 300
Riverside, CA 92501

**Debtor's Counsel:**
Marc J. Winthrop, Esq.
Winthrop Couchot
660 Newport Center Drive, Ste 400
Newport Beach, CA 92660

**Debtor in possession**
David L. Farley
2891 Venezia Terrace
Chino Hills, CA 91709-6603

**AGI's Bankruptcy Counsel:**
Robert A. Greenfield, Esq.
Stutman Treister & Glatt PC
1901 Avenue of the Stars, 12th Floor
Los Angeles, CA 90067

**Defendant**
Anatomic Global Inc.
David L. Farley, CEO
1241 Old Temescal Road
Corona, CA 92881